**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PIXIS DRONES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> LUMENIER LLC AND LUMENIER HOLDCO LLC, <br><br> Defendants. | Civil Action No. 23-141-RGA |

MEMORANDUM ORDER

Before me is Defendants' Motion to Dismiss. (D.I. 32). I have considered the parties' briefing. (D.I. 33, 42, 43). For the reasons set forth below, this motion is GRANTED in part and DENIED in part.

**I.   BACKGROUND**

The first amended complaint (D.I. 23) is the operative complaint. Plaintiff Pixis is a provider of light show performances that utilize drones. (*Id.* ¶ 6). In April 2021, Pixis contacted Defendant Lumenier LLC, a drone manufacturing company, to design and manufacture light show drones (the "Pixis Drones") that had certain enhanced performance capabilities compared to other light show drones currently on the market. (*Id.* ¶ 59). As part of that engagement, the parties entered into three agreements: the Mutual Non-Disclosure Agreement ("NDA") dated September 20, 2021 (D.I. 23-1, Ex.1), the General Service Agreement ("GSA") dated January 14, 2022 (D.I. 23-1, Ex. 2), and the Purchase Order ("PO") dated August 22, 2022 (D.I. 23-1, Ex. 3). The NDA contains a forum selection clause that states, "The Federal or State courts in New Castle County, Delaware shall have exclusive jurisdiction over any controversy arising under

1

this Agreement." (D.I. 23-1, Ex. 1, ¶ 15).  The GSA and the PO do not contain forum selection clauses.  (*See* D.I. 23-1, Exs. 2–3).

While the parties dispute the events leading up to their business relationship turning sour, Lumenier LLC eventually filed a lawsuit in the Circuit Court for Sarasota County, Florida (the "Florida Lawsuit") on December 20, 2022, seeking a declaratory judgment that Pixis had breached the GSA, among other claims.  (D.I. 23-1, Ex. 7).  On February 7, 2023, Pixis filed the instant action against Defendants Lumenier LLC and Lumenier Holdco LLC, alleging trade secret claims (Counts I and II), breach of contract claims (Counts III, IV, and VI), and a breach of contract claim related to breach of the implied covenant of good faith and fair dealing (Count V).  (D.I. 23 ¶ 39–57).  The Florida Circuit Court subsequently issued a written order on October 1, 2023, granting Pixis's motion to dismiss the Florida Lawsuit for improper venue, or, alternatively, for *forum non conveniens*.  (D.I. 58-2, Ex. B).  Defendants move to dismiss the present case.  (D.I. 32).

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6) Standard

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard.  A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

### B.  Pleading of Allegations Against Multiple Defendants

"[A] complaint that collectively refers to defendants meets Rule 8's pleading standard if "it can be reasonably inferred that each and every allegation is made against each individual defendant." *Groove Digital, Inc. v. King.com, Ltd.*, 2018 WL 6168615, at *1 (D. Del. Nov. 26, 2018) (quoting *Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50, 53-54 (D. Mass. 2014)).

### C.  Pleading of Trade Secret Claims

The Defend Trade Secrets Act ("DTSA") and Delaware Uniform Trade Secrets Act ("DUTSA") define "trade secret" in part as information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person." 18 U.S.C. § 1839(3); DEL. CODE ANN. tit. 6, § 2001.

"[A] plaintiff must identify a trade secret with sufficient particularity so as to provide notice to a defendant of what he is accused of misappropriating and for a court to determine

3

whether misappropriation has or is threatened to occur." *Progressive Sterilization, LLC v. Turbett Surgical LLC*, 2020 WL 1849709, at *6 (D. Del. Apr. 13, 2020), *report and recommendation adopted*, 2020 WL 3071951 (D. Del. June 10, 2020). "Courts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F. Supp. 635, 636 (D. Del. 1991). References to the specific product or technology embodying the trade secret can serve as sufficient identification of the trade secret. *Eastman Chem. Co. v. AlphaPet Inc.*, 2011 WL 5402767, at *5–6 (D. Del. Nov. 4, 2011), *report and recommendation adopted*, 2011 WL 6148637 (D. Del. Dec. 9, 2011).

### D. Implied Covenant of Good Faith and Fair Dealing Claim

"Under Delaware law, an implied duty of good faith and fair dealing is interwoven into every contract." *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007). The implied covenant of good faith and fair dealing involves inferring contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated. *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010). "To sufficiently allege a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege (1) a specific obligation implied in the contract, (2) a breach of that obligation, and (3) resulting damages." *OC Tint Shop, Inc. v. CPFilms, Inc.*, 2018 WL 4658211, at *4 (D. Del. Sept. 27, 2018). "Where a plaintiff has failed to identify a gap in the contract, merely repeating the defendant's allegedly improper acts or omissions already the subject of a separate breach of contract claim is insufficient to support a claim for breach of the implied covenant of good faith and fair dealing." *Haney v. Blackhawk Network Holdings, Inc.*, 2016 WL 769595, at *9 (Del. Ch. Feb. 26, 2016).

4

### E. Abstention

Under the *Colorado River* abstention doctrine, a federal court has discretion to stay or dismiss an action based on the grounds that a concurrent similar action exists in a state court which may resolve the controversy between the parties to the federal action. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). "A threshold issue that must be decided in any Colorado River abstention case is whether the two actions are 'parallel.' If they are not, then the district court lacks the power to abstain." *Ryan v. Johnson*, 115 F. 3d 193, 196 (3d Cir. 1997). "Lawsuits are considered parallel if 'substantially the same parties litigate substantially the same issues in different forums.'" *Horack v. Minott*, 1995 WL 330730, at *5 (D. Del. 1995) (quoting *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir.1991)).

The *Colorado River* abstention doctrine cannot be used to abrogate a mandatory forum selection clause. *See RGC Int'l Invs., LDC v. ARI Network Servs., Inc.*, 2003 WL 21843637, at *2 (D. Del. July 31, 2003); *FaZe Clan Inc. v. Tenney*, 407 F. Supp. 3d 440, 444 (S.D.N.Y. 2019) ("[I]t cannot be the case that *Colorado River* allows parties to avoid a mandatory forum selection clause in a contract simply by beating their adversary to the courthouse by a period of several weeks.").

### F. The Court's Inherent Authority to Grant a Stay

"The decision whether to grant a stay in this case is committed to the district court's discretion, since it is a matter of the court's inherent power to conserve judicial resources by controlling its own docket." *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). In exercising that discretion, courts consider three factors: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party, i.e., the

balance of harms; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay will promote judicial economy, e.g., how close to trial has the litigation advanced." *Husqvarna AB v. Toro Co.*, 2016 WL 5213904, at *1 (D. Del. Sept. 20, 2016).

## III. DISCUSSION

Defendants argue that the Amended Complaint should be dismissed for failure to state a claim under Rule 12(b)(6). (D.I. 33 at 6).

### A. The Notice Pleading Standard

Defendants argue the Amended Complaint fails to satisfy the notice pleading standard because Pixis makes allegations against Defendant Lumenier LLC and Defendant Lumenier Holdco LLC collectively as "Lumenier." (*Id.*). Defendants claim that Pixis is required to expressly plead that Defendants "individually and collectively" committed each alleged wrongful act. (D.I. 43 at 2 (citing *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2019 WL 330515, at *11 (D. Del. Jan. 25, 2019)). In support, Defendants point to several cases where this Court found the practice of "lumping multiple defendants together" insufficient to meet the notice pleading standard. (D.I. 33 at 7; *see Adverio Pharma GmbH v. Alembic Pharm. Ltd.*, 2019 WL 581618, at *6 (D. Del. Feb. 13, 2019); *T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, 2017 WL 896988, at *7 (D. Del. Mar. 7, 2017)).

This Court has not set out an all-encompassing rule on allegations against multiple defendants. As the Court in *IOENGINE* noted, tensions exist between the cases dealing with this issue. 2019 WL 330515, at *12. While explicitness may be prudent, what is necessary to establish fair notice depends on the context. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). The proper question in examining whether Defendants have sufficient notice is whether "it can be reasonably inferred that each and every allegation is made against each

6

individual defendant." *Groove Digital*, 2018 WL 6168615, at *1. In other words, every case is unique, and it is therefore hard to use previously-decided cases as persuasive authority.

The Amended Complaint alleges that Lumenier LLC, a Delaware company, is a subsidiary and division of Lumenier Holdco LLC, also a Delaware company. (D.I. 23 ¶ 4). It further alleges "Lumenier Holdco LLC controlled Lumenier LLC and therefore acted in concert with Lumenier LLC with respect to all of the allegations in this Complaint." (*Id.* ¶ 5). Exhibit 1 (NDA) and Exhibit 2 (GSA) of the Amended Complaint also contain evidence of this relationship (D.I. 23-1, Ex. 1 ("Lumenier Holdco LLC ... (together with its Subsidiaries, hereinafter "Lumenier")); *id.*, Ex. 2 ("Lumenier LLC, a division of Lumenier Holdco LLC")). Based on the alleged nature of the relationship, a reasonable inference can be made that all allegations made against the subsidiary, Lumenier LLC, would also be made against its controlling parent company, Lumenier Holdco LLC. *See IOENGINE*, 2019 WL 330515, at *12 (declining to dismiss the motion to dismiss in part based on the parent company's amenability to possible liability under an agency theory). I find the pleadings sufficient to put Defendants on notice that Pixis makes all allegations in the Amended Complaint against both Defendants.

### B.     Trade Secret Claims

Defendants argue that Pixis's trade secret claims should be dismissed because Pixis (1) fails to sufficiently identify the claimed trade secrets to put Defendants on notice of what they are accused of misappropriating under Counts I and II, and (2) fails to adequately allege a "trade secret" as defined by DTSA and DUTSA. (D.I. 33 at 7–12; D.I. 43 at 2–4). For the foregoing reasons, I find Pixis has sufficiently plead its trade secret claims.

### 1.      Identification of the Trade Secret

Defendants claim they lack sufficient notice of the trade secret they are accused of misappropriating because Pixis improperly points to "broad categories of information" rather than identifying specific trade secrets. (D.I. 33 at 8–10).

In its Amended Complaint, Pixis describes the claimed trade secrets as specifications for the light show drones, including the "selection of parts," and information on control and communications for aerial light drones. (D.I. 23 ¶ 56–58). The Amended Complaint labels these trade secrets "Pixis's Trade Secret Light Show Drone Specifications," "Pixis's Trade Secret Drone Parts Selection," and "Pixis's Drone Control and Communications Trade Secrets." (*Id.* ¶ 56–58).[1] These references to the Pixis Drone, which continue throughout the Amended Complaint, provide Defendants sufficient notice as to the nature of the alleged trade secret. *See Eastman Chem. Co. v. AlphaPet Inc.*, 2011 WL 5402767, at *5–6 (D. Del. Nov. 4, 2011) ("[I]n light of the repeated references to IntegRex™ PET technology in the Amended Complaint, it is clear that Plaintiff has identified the illicit disclosure and use of information relating to that particular type of melt-to-resin technology as the gravamen of its trade secret misappropriation claim.").

Defendants argue that Pixis must point to a specific plaintiff-owned product to plead by reference. (D.I. 43 at 2–3). This argument fails because Defendants should be placed on notice by reference to a product that they were contracted to design and manufacture. Accepting Pixis's allegations as true, as I must, the only reason that Pixis does not currently own these products is that Lumenier failed to deliver the products in violation of various contracts. (D.I. 23 ¶¶ 167,

---

[1] The third category seems less well-defined than the other two, but, at this stage, all I need to decide is that there is at least one trade secret alleged.

168, 171, 180–184). Defendants' claim is also perplexing as they previously delivered at least six prototypes of the Pixis Drone to Pixis and provided samples during expedited discovery. (*Id.* ¶ 184; D.I. 55 at 1).

Defendants also maintain that, under *Leucadia*, Pixis should be required to identify its trade secret with greater particularity because Pixis filed the original Complaint under seal. (D.I. 33 at 10; D.I. 7). While the ability to file under seal may alleviate concerns regarding public disclosure of trade secrets, Defendants point to no authority that says it affects *Eastman*'s applicability. I find that the Amended Complaint provides Defendants with sufficient notice of what they are accused of misappropriating.

### 2. "General Knowledge" Inquiry

Defendants argue the Amended Complaint does not plead with sufficient particularity to separate the subject matter of the trade secret from matters of general knowledge, and therefore Pixis has failed to allege a "trade secret" as defined by the DTSA and DUTSA. (D.I. 43 at 3).

The Amended Complaint alleges that the claimed trade secrets, covering information related to the Pixis Drones, were "not generally known to anyone outside Pixis" and "would differentiate a drone light show provider . . . in the marketplace." (D.I. 23 ¶ 199, 201). The claimed market advantages of the Pixis Drones over other light show drones include longer flight times of approximately twenty minutes, brighter light arrangements, and capability to operate in wet weather conditions. (*Id.* ¶¶ 55–56). The Amended Complaint sufficiently pleads a "trade secret" outside what is generally known in the industry. To the extent that the parties dispute whether or not the alleged trade secret is actually "general knowledge," the motion to dismiss stage is not the appropriate time to address factual disputes.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

Defendants argue that Pixis has not plead sufficient allegations to raise a claim of breach of the implied covenant of good faith and fair dealing. (D.I. 33 at 12). They maintain that Pixis only raises claims governed by the express terms of the GSA and the PO. (*Id.* at 13; D.I. 43 at 4–5).

The Amended Complaint accuses Defendants of "bad faith and arbitrary conduct deliberately designed to take secure control of Pixis's Trade Secrets and Proprietary Confidential Information." (D.I. 23, ¶ 262). Pixis argues this "premeditated scheme" allegation is distinct from its breach of contract claims. (D.I. 42 at 13–14). Defendants' conduct, however, appears to amount to unreasonable behavior related to breach of provisions of the GSA and the PO. (*See id.* at 14; D.I. 23 ¶¶ 144–67, 270–74 (accusing Defendants of pretextual assertion of breach of the GSA, unreasonably termination of the PO, unjustified price increases in violation of the GSA, and other unreasonable acts in relation to the contracts)). Pixis fails to allege a specific contractual gap that needs to be filled or any contract terms that should be implied. Since Pixis "merely repeat[s] the defendant's allegedly improper acts or omissions already the subject of a separate breach of contract claim," I find Pixis's pleadings insufficient to support a claim for breach of the implied covenant of good faith and fair dealing. *Haney*, 2016 WL 769595, at *9.

### D. The Florida Lawsuit

Defendants argue that I should dismiss or stay the instant action, under the *Colorado River* abstention doctrine or this Court's inherent authority, based on the existence of the Florida Lawsuit. (D.I. 33 at 13–18; *see Lumenier LLC v. Pixis Drones, LLC*, No. 2022 CA 005853 NC (Fla. Cir. Ct. Dec. 20, 2022)).

Defendants assert that the NDA forum selection clause does not affect applicability of the *Colorado River* abstention doctrine. Specifically, Defendants argue that the Florida Lawsuit does not involve a cause of action for breach of the NDA and therefore does not implicate the forum selection clause. (D.I. 43 at 6–7). I agree with the Florida Circuit Court, however, that adjudication of the Florida Lawsuit likely necessitates consideration of the NDA. (D.I. 58-1, Ex. A, at 17 ("There is no way that I can contemplate that somehow this matter before me is going to proceed, dealing specifically with ownership interest or rights in the intellectual property and also the technology that Plaintiff in my case is claiming ownership of without implicating the NDA and the restrictions that are placed on that and how the NDA specifically deals with that Confidential Information.")). I therefore find the NDA forum selection clause forecloses application of the *Colorado River* abstention doctrine. *See RGC Int'l Invs., LDC*, 2003 WL 21843637, at *2.

Lumenier filed a Third Amended Complaint in the Florida Lawsuit and has removed its request for declaratory judgment on intellectual property ownership under the GSA. (*Compare* D.I. 42-1, Ex. 1, at 4 *with* D.I. 62-2, Ex. 2, at 5). It is possible this deletion eliminates the need for the Florida Circuit Court to consider the NDA. The *Colorado River* abstention doctrine would nevertheless not apply. The Florida Lawsuit would involve the sole issue of breach of the GSA, compared to the instant action which includes claims for breach of two additional contracts and trade secret claims. As the two cases would not present "substantially the same issues" and consequently not be "parallel," I would lack the power to abstain. *Horack v. Minott*, 1995 WL 330730, at *5.

Defendants argue in the alternative that, under this Court's inherent authority, I should stay this lawsuit until the resolution of the Florida Lawsuit. (D.I. 43 at 16–18). I find that the

11

discretionary considerations do not weigh in favor of granting a stay. While it is not clear that Pixis would be unduly prejudiced by a stay at this stage, I agree with the Florida Circuit Court that, regardless of any decision in the Florida Lawsuit, Pixis would still be able to pursue claims in this jurisdiction.[2] (D.I. 58-1, Ex. A, at 31). Resolution of the Florida Lawsuit would therefore not simplify the issues in this case or promote judicial economy in a substantial manner.

## IV.   CONCLUSION

For the above reasons, Defendants' Motion to Dismiss (D.I. 32) is **GRANTED** in part and **DENIED** in part. Defendants' Motion to Dismiss Pixis's claim for breach of the implied covenant of good faith and fair dealing (Count V) is **GRANTED**, with Pixis having leave to amend.[3] Defendants' Motion to Dismiss the remaining Counts is **DENIED**.

IT IS SO ORDERED.

Entered this 12th day of October, 2023

_United States District Judge_

---

[2] The fact that Lumenier's Third Amended Complaint no longer seeks relief related to intellectual property ownership under the GSA only bolsters this concern.

[3] I note that Pixis did not request leave to amend, but I nevertheless give it the opportunity to amend its Complaint if it concludes it can successfully replead.