IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PIXIS DRONES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>LUMENIER LLC AND LUMENIER HOLDCO LLC,<br><br>    Defendants. | Civil Action No. 23-141-RGA |

MEMORANDUM ORDER

Before me is Plaintiff's Motion for Preliminary Injunction. (D.I. 17). I have considered the parties' briefing. (D.I. 18, 47, 55, 60, 62, 64). For the reasons set forth below, this motion is DENIED.

**I.   BACKGROUND**

Plaintiff Pixis is a provider of light show performances that utilize drones. (D.I. 18 at 3). In April 2021, Pixis contacted Defendant Lumenier LLC ("Lumenier"), a drone manufacturing company, to design and manufacture light show drones (the "Pixis Drones") that had certain enhanced performance capabilities compared to other light show drones currently on the market. (D.I. 18 at 3; D.I. 47 at 3). As part of that engagement, the parties entered into three agreements: the Mutual Non-Disclosure Agreement ("NDA") dated September 20, 2021 (D.I. 23-1, Ex.1), the General Service Agreement ("GSA") dated January 14, 2022 (D.I. 23-1, Ex. 2), and the Purchase Order ("PO") dated August 22, 2022 (D.I. 23-1, Ex. 3). The GSA includes an exclusivity provision that states, "The Parties acknowledge that this Agreement is exclusive, and that either Party will refrain from engaging with or contracting additional third parties for the provision of

1

services similar to the Services while this agreement remains in effect." (D.I. 23-1, Ex. 2 ¶ 18). The PO includes a different exclusivity provision that states, "The light show drone being purchased for this PO has been developed for the exclusive use of Pixis. Lumenier will not sell the Pixis light show drone without the consent and/or licensing agreement in place between Lumenier & Pixis." (*Id.*, Ex. 3 ¶ 1).

While the parties dispute the events leading up to their business relationship turning sour, Lumenier eventually filed a lawsuit in Sarasota County, Florida on December 20, 2022, seeking declaratory judgment that Pixis had breached the GSA, among other claims. (D.I. 18 at 4–8; D.I. 47 at 6–8; D.I. 23-1, Ex. 7; D.I. 48-1, Ex. A). In early February 2023, Lumenier began marketing a lightshow drone called the "Arora Drone," which Pixis argues is the same as the Pixis Drone. (D.I. 18 at 9–10; D.I. 47 at 8). Pixis subsequently filed the present suit alleging misappropriation of trade secrets, breach of contract, and a breach of the implied covenant of good faith and fair dealing. (D.I. 2 ¶¶ 182–278). As of the filing of the First Amended Complaint, Lumenier had only delivered six Pixis Drone prototypes to Pixis. (D.I. 23 ¶ 184). On March 16, 2023, Pixis filed this Motion for Preliminary Injunction, seeking to enjoin Lumenier "from selling, offering for sale, marketing, advertising, or promoting the Arora Drones or any colorable imitations thereof." (D.I. 17 at 1). At my request, the parties recently submitted supplemental letter briefing. (D.I. 60, 62, 64).

## II. LEGAL STANDARD

"The decision whether to enter a preliminary injunction is committed to the sound discretion of the trial court." *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1437 (3d Cir. 1994) (quoting *Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co.*, 963 F.2d 628, 633 (3d Cir. 1992)). The Third Circuit has cautioned that a preliminary injunction is "an

extraordinary remedy" to be granted "only in limited circumstances." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)). When seeking a preliminary injunction, a movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The movant must establish the first two requirements before a court considers, to the extent relevant, the remaining two prongs of the standard. *Cipla Ltd. v. Amgen Inc.*, 778 F. App'x 135, 138 (3d Cir. 2019).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

Pixis argues it is likely to succeed in showing that Lumenier breached its contractual obligations not to sell the Pixis Drones or similar light show drones under the exclusivity provisions of the GSA and the PO. (D.I. 18 at 12). Lumenier does not dispute the validity of either agreement. (*See* D.I. 47 at 9–10).

Lumenier argues that it has not violated the GSA exclusivity provision because the contract defines the exclusive "Services" not to include "the sale of off-the-shelf light show drones to third parties." (D.I. 47 at 9 (citing D.I. 23-1, Ex. 2 ¶ 1)). As discussed below, I disagree that the Arora Drones qualify as "off-the-shelf" drones. Lumenier, however, also alleges that Pixis materially breached the GSA in November 2022 by engaging Uvify to replace Lumenier as Pixis's contract manufacturer, and Lumenier was thereafter relieved of its contractual obligations. (D.I. 47 at 10–11). Pixis contests the allegations that it entered into

3

discussions with Uvify to replace Lumenier as its contract manufacturer. (D.I. 18 at 15; D.I. 55 at 5–6). In support, Pixis submits deposition testimony and declarations of two Pixis founders. (D.I. 18 at 15; D.I. 55-2, Ex. B, 166:15–24; D.I. 19 ¶¶ 55–56; D.I. 20 ¶ 49). Pixis also points to an email between the Pixis founders, sent one day after Pixis received a letter stating Lumenier believed Pixis had breached the GSA. (D.I. 20-1, Ex. 5; D.I. 23-1, Ex. 4; D.I. 23 ¶ 38). Lumenier submits declarations of individuals associated with Lumenier to corroborate its claim. (D.I. 47, Ex. 1 ¶ 21; *id.*, Ex. 2 ¶ 5). Based on these competing accounts, I find plausible Lumenier's claim that Pixis "engag[ed] or contract[ed] with additional third parties for the provision of services similar to the Services" and materially breached the GSA.[1] (D.I. 23-1, Ex. 2 ¶ 18). I therefore cannot find that Pixis is likely to succeed on its claim that Lumenier breached the GSA.[2]

Lumenier argues it has not violated the PO exclusivity provision because the Arora Drone is not the same as the Pixis Drone. The Arora Drone and Pixis Drone samples provided during expedited discovery appear virtually identical, and Lumenier concedes the similarity of the hardware. (D.I. 55 at 1; D.I. 47 at 10). Lumenier nevertheless argues that the two drones are different because the Arora Drone includes firmware and software, while the Pixis Drones do

---

[1] While Pixis claims that Lumenier already had the opportunity and failed to obtain sufficient evidence to show that the conversations with Uvify occurred, I do not know how far discovery progressed in the Florida lawsuit. (D.I. 55 at 6). I also do not believe Lumenier has provided evidence that establishes that its own position is likely.

[2] Pixis claims it assured Lumenier that it had not sought an alternative contract manufacturer and therefore its conduct did not amount to repudiation of the contract. (D.I. 55 at 6; *see* D.I. 19 ¶¶ 55–56; D.I. 20 ¶ 46; D.I. 23-1 Ex. 5). This argument conflates repudiation with material breach, which is the argument Lumenier presents in its briefing. *See Level 4 Yoga, LLC v. CorePower Yoga, LLC*, 2022 WL 601862, at *27 (Del. Ch. Mar. 1, 2022) ("Delaware law firmly supports the principle that a party to a contract is excused from performance if the other party is in material breach of his contractual obligations").

not. (*Id.* at 10). Adding software or firmware, which Lumenier admits it was not contracted to develop under the GSA (*id.* at 4), does not transform the underlying hardware into a different product. Selling the Arora Drone, i.e., the Pixis Drone hardware with added software and firmware, still involves selling the Pixis Drone hardware in violation of the PO's exclusivity provision. I therefore find that Pixis has shown it is likely to succeed on its claim that Lumenier breached the PO. As I find Pixis likely to succeed on at least one of its claims, I next consider irreparable harm.

### B. Irreparable Harm

Pixis claims that it will suffer irreparable harm absent injunctive relief because the loss of the first-mover advantage of being the first light show provider to use the Pixis/Arora Drone technology. (D.I. 18 at 16). Since this motion was filed on March 16, 2023, Lumenier has sold or leased 210 Arora Drones to light show providers and resellers and provided drone specification information to more than 700 potential customers. (D.I. 62 at 2; D.I. 62-1, Ex. 1 ¶ 8). The Arora Drones have been displayed in at least seven commercial light shows. (62-1, Ex. 1 ¶ 6–7). These facts alone suggest that Pixis's first-mover advantage has already been lost.

Defendants also submitted a declaration describing other drones with similar capabilities to the Pixis Drones. (*Compare* D.I. 62-1, Ex. 1 ¶¶ 13, 14 *with* D.I. 23 ¶ 56). Pixis describes the competitive advantage provided by the Arora Drones to include "the ability to deliver a longer 20-minute show, with more impressive light color and quality, and in a wider range of wet weather conditions." (D.I. 19 ¶ 73). Verge Aero's new X7 drone is described as having "flight times of up to twenty-one minutes, a rugged/weather resistant design, . . . and brighter lights" and includes additional features, such as "fast charging and a smart battery, as well as folding legs and the ability to float on water." (D.I. 62-1, Ex. 1 ¶ 14). In a follow-up letter to the

supplemental briefing, Pixis provides evidence that the Arora Drone has a twenty-five-minute show time and the X7 drone has a sixteen-minute show-time. (D.I. 64). Pixis, however, does not contest the X7 drone's additional features or respond to Defendants' assertion that Flyfire s.r.l.'s Kaiken lightshow drone and Uvify's IFO drone, which reportedly has a twenty-five-minute flight time, have similar performance capabilities to the Arora Drone. (D.I. 62-1, Ex. 1 ¶ 13). Pixis has not put forth sufficient evidence to contest Defendants' claim that some already-existing or forthcoming drones have comparable performance capabilities to the Pixis Drones. In light of Lumenier's distribution of Arora Drones and technology advancements in the market, it appears (and I so find for purposes of this decision) that any first-mover advantage that Pixis once had no longer exists.

Pixis argues that it will suffer irreparable harm in the form of reputational harm, loss of goodwill, and loss of market share. (D.I. 18 at 16–17; D.I. 60 at 3–4). Pixis provides minimal evidence to support these claimed harms and instead appears to base its position on loss of the opportunity to be the first light show provider to use the Pixis Drone technology. (*See* D.I. 18 at 17 (citing *Butamax Advanc. Biofuels LLC v. Gevo, Inc.*, 868 F. Supp. 2d 359, 374 (D. Del. 2012) as an example where irreparable harm was found when "competitor develops relationships with retailers to become first entrant into the marketplace, affecting plaintiff's reputation, goodwill, and business opportunities"); *id.* at 18 ("The publicity and massive social media engagement opportunity from first-of-a-kind performances that the Pixis Drones could deliver will be lost forever. . . . Without its bargained-for first-mover advantage, it is likely Pixis will quickly lose its place as a market leader in the light show industry."); D.I. 55 at 8 (arguing that, without an injunction, "Pixis's reputation as a market leader and innovator in the industry will be

jeopardized")). As I have found that the first-mover advantage has already been lost, these arguments are not enough to support a finding of irreparable harm.

Pixis also argues that it will lose market share to drone operators who purchase Arora Drones "because Pixis will be unable to compete with the advanced technology incorporated into the Arora Drones." (D.I. 18 at 16). I am not convinced this is true. As discussed, there are other drones on the market that have similar capabilities to the Arora Drones. Pixis has not shown that it will be unable to find such drones. It is not clear that the Arora Drones have any unique features that would give its users a significant competitive edge. For example, even if the X7 drones do not have as long a flight time, Pixis does not contest that it has other features that the Arora Drones do not have. I am not in a position to determine whether any particular drone feature provides a greater competitive advantage than another, let alone that a drone with such a feature renders users of other drones unable to compete. Pixis has not provided sufficient evidence to demonstrate it will lose market share absent injunctive relief.

I conclude that Pixis failed to demonstrate irreparable harm. As a result, I need not address the remaining factors plaintiffs must establish when moving for a preliminary injunction. *See Cipla Ltd. v. Amgen Inc.*, 778 F. App'x at 138.

### IV. CONCLUSION

For the reasons above, Plaintiff's Motion for Preliminary Injunction (D.I. 17) is **DENIED.**

IT IS SO ORDERED this 20th day of October 2023.

Richard G. Andrews
United States District Judge